**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Daniel Berg, | No. CV-26-01453-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| David K. Byers, *et al.*, | |
| Defendants. | |

Before the Court is *pro se* Plaintiff Justin Daniel Berg's In Forma Pauperis Request Complaint for Violation of Civil Rights (42 U.S.C. § 1983) ("IFP Application") (Doc. 2) and TRO-Temporary Restraining Order In Forma Pauperis Complaint for Violation of Civil Rights (42 U.S.C. § 1983) ("TRO Application") (Doc. 3). Having determined that Plaintiff is unable to pay the Court's fees, the Court grants the IFP Application. However, upon screening Plaintiff's Complaint (Doc. 1, Compl.) pursuant to 28 U.S.C. § 1915(e)(2), the Court dismisses the Complaint and denies the TRO Application as moot.

## I.    BACKGROUND

"[I]n his capacity as a Private Attorney General," Plaintiff sues multiple state employees across various state governmental entities. (Compl. at 1.) He seeks to "restore [his] parental rights" after "being medically emancipated from this fog" brought on by a "Cognitive Cage." (*Id.* at 2.) According to Plaintiff, on September 5, 2014, a state court entered a child support order that was unsigned by the judicial officer ("2014 Order"). (*Id.* at 6–7.) Since that time, Plaintiff has incurred $96,264 in child support arrears. (*Id.* at 7.)

Plaintiff alleges that the 2014 Order and child support arrears stem from a faulty electronic court record system maintained by the state court and other state entities. (*Id*. at 6.) This system is allegedly a "Bifurcated Record Architecture" designed to create a "Shadow Track" system of orders that are unsigned by judicial officers. (*Id*.) By way of example, Plaintiff attaches a February 9, 2026 order issued by Judge Rhonda Fisk of the Superior Court of Maricopa County ("2026 Order"). (Doc. 1-1 at 2–4.) According to him, the 2026 Order is unsigned and exemplifies the use of the "Shadow Track." (Compl. at 9.) The 2026 Order also "ratifies" a judicial policy of risk to his child's physical safety after his child self-harmed. (*Id*. at 7.)

Plaintiff conducted a "Forensic Audit" of his state court documents using his "cognitive prosthetic," an artificial intelligence platform called Google Gemini. (*See id*. at 7; Doc. 1-1 at 14–15.) This audit revealed that 45.9% of substantive orders lacked a judicial signature, which he refers to as the "Signature Gap." (Compl. at 6.) With the use of his cognitive prosthetic, Plaintiff proposes a "Child-Centered Court Integrity Initiative" to repair what he views as a broken system in a self-titled "Manifesto of Restorative Justice" attached as an exhibit to the Complaint. (Doc. 1-1 at 21–56.)

Finally, Plaintiff alleges that Defendants denied him the use of his cognitive prosthetic as accommodation for his traumatic brain injury. (Compl. at 7.) The denial of his accommodation created a "Cognitive Cage" that disabled him from reporting the Shadow Track system to federal authorities. (*Id*.)

Plaintiff brings six claims. All the claims except Count Five assert a violation of Plaintiff's civil rights under the Civil Rights Act, 42 U.S.C. §§ 1983, 1985. Count Five asserts a failure to accommodate Plaintiff's disability in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132. He seeks the restitution of the child support arrears he incurred, damages for his 251-day imprisonment that occurred at some unknown time, and punitive damages in the amount of $10 million to be placed in trust for the implementation of his Manifesto. (*Id*. at 11.) He also seeks declaratory judgment that the 2014 Order is void, the "Signature Gap" constitutes a *Monell* custom that violates the

Fourteenth Amendment, and the refusal of Plaintiff's cognitive prosthetic constitutes an ADA violation. (*Id*. at 11–12.) Finally, he demands that a "Special Master" be appointed to audit the state electronic court record system to identify the "Signature Gap." (*Id*. at 12.)

## II.    IFP APPLICATION

The Court may authorize a party to commence a civil action without prepaying court fees—to proceed in forma pauperis ("IFP")—if the person submits an affidavit attesting to their poverty. 28 U.S.C. § 1915(a)(1). Although a plaintiff seeking IFP status need not be "absolutely destitute," he or she "must allege poverty with some particularity, definiteness and certainty." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (citation modified). "[T]here is no formula set forth by statute, regulation, or case law to determine when someone is poor enough to earn IFP status." *Id*. at 1235. The determination is within the district court's discretion. *Cal. Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991), *rev'd on other grounds by* 506 U.S. 194 (1993). Here, Plaintiff submits an IFP Application that reports no income at all and ongoing monthly expenses of $1,900 and minimal property. (Doc. 2 at 3–4.). Plaintiff demonstrates an inability to pay filing fees, so the Court will grant Plaintiff's IFP Application.

## III.    SCREENING OF COMPLAINT

For cases like this one in which a party is permitted to proceed IFP, 28 U.S.C. § 1915(e)(2) provides that a district court must screen that party's complaint for, *inter alia*, whether it states a claim for which relief may be granted. *Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court is to construe a *pro se* plaintiff's complaint "liberally" and afford the plaintiff "the benefit of any doubt." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citation omitted). In addition to screening IFP complaints under § 1915, "[f]ederal courts have an independent obligation to ensure that they do not exceed the scope of their

jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The plaintiff bears the burden of establishing the court's jurisdiction over his claims.

### A.   *Rooker-Feldman* Doctrine

The *Rooker–Feldman* doctrine provides that a federal district court lacks subject-matter jurisdiction to consider an appeal from the final judgment of a state court. *Noel v. Hall*, 341 F.3d 1148, 1154–55 (9th Cir. 2003). A disappointed party may not seek reversal of a state court judgment by appealing to a federal district court. *Id.* at 1155. Known as *de facto* appeals, suits in which "the adjudication of the federal claims would undercut the state ruling" are barred under this doctrine. *Bianchi v. Rylaardsam*, 334 F.3d 895, 898 (9th Cir. 2003). Thus, *Rooker–Feldman* "looks to federal law to determine whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Id.* at 901 (citation modified). And when refusing to consider a forbidden *de facto* appeal, a federal district court must also decline "to decide any issue in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Noel*, 341 F.3d at 1159 (quoting *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983)). "If a federal plaintiff has brought a de facto appeal from a state court decision—alleging legal error by the state court and seeking relief from the state court's judgment—he or she is barred by *Rooker-Feldman*." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th Cir. 2004).

Whether *Rooker–Feldman* bars Plaintiff's claims turn on what he alleges is his harm and from where that harm arose. At the heart of Plaintiff's allegations underlying Counts One, Three and Six is the unsigned 2014 Order. For example, Plaintiff's first claim asserts that the unsigned nature of the 2014 Order deprived him of "Liberty, Parental Rights, and Property ($96,264)." (Compl. at 8.) Relatedly, Plaintiff's third and sixth claims assert that Defendants conspired to interfere with his parental rights by entering and enforcing the

"Ghost Order" (*id.* at 9), which resulted in an "extraction of $96,264 in human capital," "child endangerment," and "Conceal[ed] Jurisdictional Nullities" (*id.* at 10). Plaintiff essentially seeks the Court's review of the 2014 Order and to rule it void for lack of signature. But this would impermissibly "undercut the state ruling" and is precisely the kind of appellate review that *Rooker-Feldman* prohibits.

### B.    Failure to State a Claim

#### 1.    *Monell Claims*

In order to establish a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a plaintiff must allege: "(1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (citation modified).

In his second and fourth claims, Plaintiff alleges that Defendants' use of the Shadow Track system blocks his right to petition the courts for redress, which violates his First and Fourteenth Amendment rights.[1] (*Id.* at 8) According to Plaintiff, this custom was ratified by Judge Fisk in the unsigned 2026 Order and amounts to an unconstitutional practice under *Monell*. (*Id.* at 9.)

Even taking these allegations as true, Plaintiff fails to allege sufficient facts to establish a civil rights violation claim under *Monell*. Plaintiff's primary grievance is that the unsigned state court orders "block his right" to access the courts. But whether a state court order is signed does not, on its own, imply that Plaintiff was denied access to a court system. In fact, his own allegations and attached exhibit demonstrate that he *has* accessed the courts. In or around February 2026, Plaintiff was actively litigating his family law matter in state court and requested a change of judge, which was ultimately denied by Judge Fisk.[2] (Doc. 1-1 at 2–4.) Plaintiff still had his day in court notwithstanding the fact that the

---

[1] Plaintiff also alleges that Defendants have a practice of "Deep-Freezing evidence within the CJC/AG administrative purgatory" (Compl. at 8), but there is no explanation of what "evidence" he refers to, what "deep-freezing" means, or what the "purgatory" is.

[2] To the extent Plaintiff challenges the denial of his request, that claim would be barred

- 5 -

2026 Order was unsigned, and he fails to allege sufficient facts to support an inference otherwise.

Plaintiff also alleges that there is an unconstitutional "No Obligation" policy that supersedes mandated reporter obligations and child safety. (Compl. at 9.) According to Plaintiff, Judge Fisk ratified this policy in the 2026 Order. (*Id*. at 7, 9.) But the Court cannot infer from this singular, conclusory allegation that the 2026 Order[3] ratified such a policy or that policy even exists among state actors.

### 2. *ADA Claims*

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "To state a claim of disability discrimination under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002), *cert. denied*, 538 U.S. 921 (2003) (citation modified).

Plaintiff's fifth claim asserts a violation of Title II of the ADA when Defendants denied him use of his cognitive prosthetic for "effective communication" that prevented him "from reporting the $96,264 extraction and the [] Signature Gap." (Compl. at 9.) According to Plaintiff, Defendant Byers, as the director of the Administrative Office of the Courts, is the "Architect of the ECR Code" that uses "Ghost Orders" that make up the

---

under *Rooker-Feldman* because the Court would have to hold that the state court was wrong to deny him a change of judge, which is an impermissible appeal. *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001).
[3] The 2026 Order, which Plaintiff attaches to his Complaint, does not mention any mandatory reporting obligations or child safety. (*See* Doc. 1-1 at 2–4.)

"Signature Gap" (*id*. at 3), Defendant Alvardo-Thorson, as the Director of the Arizona Department of Administration, delegated "the authority to deny mandatory cognitive prosthetics" (*id*. at 4), and persons named Elliot and Quiroz "explicitly refus[ed] ADA-mandated cognitive prosthetics despite actual knowledge of the Plaintiff's TBI-related barriers" (*id*. at 7).

Even assuming the truth of this allegation, Plaintiff fails to allege the elements of an ADA claim. First, Plaintiff's allegations regarding the "Signature Gap" have to do with unsigned state court orders and have no logical bearing upon whether Plaintiff was denied an accommodation for his disability. Second, Plaintiff fails to assert facts detailing what benefit Plaintiff was excluded from or how Alvarado-Thorson's delegation of authority excluded him from the benefit. Third, neither Elliot nor Quiroz are named as defendants, and their role and the specific actions they took are unknown. Without more context, it is impossible to discern how Plaintiff was discriminated against in the purported denial of a public entity's services, programs, or activities.

## IV.    CONCLUSION

While the Court grants Plaintiff leave to proceed *in forma pauperis*, the Court must dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction and failure to state claims upon which relief may be granted. Accordingly, the TRO Application will be denied as moot.

Ordinarily, a plaintiff is entitled to amend the complaint upon dismissal if the defective complaint can be cured. *See Lopez*, 203 F.3d at 1130. But no amount of pleading can save Counts One, Three or Six of the defects under *Rooker-Feldman* because the root injury of those claims arises from the state court judgment itself. Those claims are dismissed with prejudice. It is possible, however, that Plaintiff can plead additional facts that state a claim under Counts Two, Four, and Five. If he so chooses, Plaintiff may file an amended complaint no later than fourteen days from the date of this Order amending only Counts Two, Four, and Five to cure them of the defects identified herein. Otherwise, the Clerk of Court shall dismiss this matter without further notice.

**IT IS ORDERED** granting Plaintiff's In Forma Pauperis Request Complaint for Violation of Civil Rights (42 U.S.C. § 1983) (Doc. 2).

**IT IS FURTHER ORDERED** dismissing Complaint for Violation of Civil Rights (42 U.S.C. § 1983) (Doc. 1).

**IT IS FURTHER ORDERED** denying Plaintiff's TRO-Temporary Restraining Order In Forma Pauperis Complaint for Violation of Civil Rights (42 U.S.C. § 1983) (Doc. 3) as moot.

**IT IS FURTHER ORDERED** that, no later than fourteen days from the date of this Order, Plaintiff may file an amended complaint amending only Counts Two, Four, and Five to cure the pleading defects identified herein. If Plaintiff fails to do so, the Clerk of Court shall dismiss this matter without further notice.

Dated this 6th day of March, 2026.

Honorable John J. Tuchi
United States District Judge